UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| VICKIE DAVIS,<br><br>    Plaintiff,<br><br>v.<br><br>CREDIT COLLECTION SERVICES, INC., KEMPER CORPORATION, and SELECTQUOTE AUTO & HOME SERVICES, LLC,<br><br>    Defendants. | CIVIL COMPLAINT<br><br>CASE NO. 4:18-cv-03731<br><br>DEMAND FOR JURY TRIAL |

**COMPLAINT FOR RELIEF PURSUANT TO**
**THE FAIR DEBT COLLECTION PRACTICES ACT**

NOW comes VICKIE DAVIS ("Plaintiff"), by and through her attorneys, Sulaiman Law Group, Ltd. ("Sulaiman"), complaining as to the conduct of CREDIT COLLECTION SERVICES, INC. ("CCS"), KEMPER CORPORATION ("Kemper"), and SELECTQUOTE AUTO & HOME SERVICES, LLC ("SelectQuote") (collectively, "Defendants"), as follows:

NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Fair Debt Collection Practices Act ("FDCPA") under 15 U.S.C. §1692 *et seq.* and the Texas Debt Collection Act ("TDCA") under Tex. Fin. Code Ann. § 392 *et seq.* for Defendants' unlawful conduct.

JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the FDCPA. Subject matter jurisdiction is conferred upon this Court by 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claims pursuant to 28 U.S.C.

1

§1367 because they arise out of the common nucleus of operative facts of Plaintiff's federal questions claims.

3.  Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendants conduct business in the Southern District of Texas and a substantial portion the events or omissions giving rise to the claims occurred within the Southern District of Texas.

4.  Joinder of Plaintiff's claims against Defendants is proper under Fed. R. Civ. P. 20(a)(2) as the claims arise out of the same transaction, occurrence, or series of transactions or occurrences; and the claims arise out of common questions of law and fact.

## PARTIES

5.  Plaintiff is a consumer over 18 years-of-age residing in Harris County, Texas, which is located within the Southern District of Texas.

6.  CCS states the following information in its website: "We are required to make the following statement: This is an attempt to collect a debt and any information obtained will be used for that purpose. This communication is from a debt collector."[1] CCS is a corporation organized under the laws of the state of Massachusetts with its principal place of business located at 240 Commercial St., Suite 3A, Boston, MA 02109. CCS engages in collection activities in several different states, including the state of Texas.

7.  Kemper promotes itself as "one of the nation's leading insurers."[2] Kemper is a corporation headquartered in Chicago, Illinois with C T Corporation System as its registered agent, located at 208 S. LaSalle Street, Suite 814, Chicago, IL 60604.

---

[1] https://self-service.ccsusa.com/
[2] https://www.kemper.com/wps/portal/Kemper/Home/AboutKemper/QuickFacts/

8. SelectQuote is an insurance broker that boasts the following statement: "our insurance professionals do the research for you."[3] SelectQuote is a limited liability company organized under the laws of Delaware, with Corporation Service Company as its registered agent, located at 251 Little Falls Drive, Wilmington, DE 19808.

9. Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

### FACTS SUPPORTING CAUSES OF ACTION

10. Shortly before April of 2018, Plaintiff was interested in purchasing insurance for her personal home and automobile.

11. Plaintiff requested insurance quotes through an online survey.

12. After requesting quotes for home and automobile insurance, Plaintiff was contacted by SelectQuote.

13. SelectQuote offered Plaintiff the option of purchasing home and automobile insurance from Kemper.

14. As part of the negotiation process, Plaintiff had to disclose her banking information before she purchased the insurance policies from Kemper.

15. Thereafter, SelectQuote mailed a copy of the proposed insurance policies to Plaintiff's home address.

16. After further inquiries, Plaintiff decided to purchase her home and automobile insurance from State Farm.

---

[3] https://autoandhome.selectquote.com/about-us/

17. Plaintiff never signed a contract with Kemper, nor did she authorize Kemper to use her banking information to withdraw premium payments.

18. Around April 2, 2018, Plaintiff contacted SelectQuote and informed it of her decision to purchase insurance from State Farm.

19. Without a signed contract, Kemper withdrew $810.10 from Plaintiff's checking account on May of 2018.

20. Plaintiff's bank, Wells Fargo, charged her a fee for insufficient funds when Kemper improperly withdrew payment from Plaintiff's bank account.

21. Plaintiff reminded SelectQuote that she decided to purchase other polices and that there was no agreement between Kemper and Plaintiff.

22. SelectQuote told Plaintiff that she needed to communicate her grievances to Kemper.

23. Frustratingly, Kemper told Plaintiff that she needed to resolve her issue with SelectQuote.

24. Kemper attempted to withdraw further payments from Plaintiff's bank account after she had continuously endeavored to cease Kemper's improper withdrawals.

25. In early September 2018, Plaintiff received a collection letter in the mail from CCS.

26. This was the first collection letter Plaintiff received from CCS regarding the purported debt owed to Kemper ("subject consumer debt").

27. This letter represented that the "Amount of the Debt" as $272.70.

28. Thereafter, the letter contains a portion which reads:

> Our records indicate a partial payment was recently posted to your account. However, the full amount was expected.

29. Plaintiff was confused by CCS's letter, as she was under the impression that she could not possibly owe anything to Kemper because she never signed a contract and constantly reminded SelectQuote and Kemper that she did not purchase Kemper's insurance policies.

30. CCS sent a second collection letter to Plaintiff in which it represented that the "Amount of the Debt" as $353.70.

31. Plaintiff was confused by CCS' second letter, as she was under the impression that interest, late charges, and other costs could no longer be added to the subject consumer debt.

32. Frustrated over Defendants' conduct, Plaintiff spoke with Sulaiman regarding her rights, resulting in expenses.

33. Plaintiff has been unfairly and unnecessarily harassed by Defendants' actions.

34. Plaintiff has suffered concrete harm as a result of Defendants' actions, including but not limited to, invasion of privacy, aggravation that accompanies contact with debt collectors, emotional distress, and bank fees and other charges.

<u>COUNT I – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT</u>
**(AGAINST CCS)**

35. Plaintiff repeats and realleges paragraphs 1 through 34 as though full set forth herein.

36. Plaintiff is a "consumer" as defined by 15 U.S.C. §1692a(3) of the FDCPA.

37. CCS is a "debt collector" as defined by §1692a(6) of the FDCPA, because it regularly use the mail and/or the telephone to collect, or attempt to collect, delinquent consumer accounts.

38. CCS identifies itself as a debt collector, and is engaged in the business of collecting or attempting to collect, directly or indirectly, defaulted debts owed or due or asserted to be owed or due to others.

39. The subject consumer debt is a "debt" as defined by FDCPA §1692a(5) as it arises out of a transaction due or asserted to be owed or due to another for personal, family, or household purposes.

   a. **Violations of the FDCPA § 1692e**

5

40. The FDCPA, pursuant to 15 U.S.C. §1692e, prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

41. In addition, this section enumerates specific violations, such as:

> "The false representation of – the character, amount, or legal status of any debt . . . ." 15 U.S.C. § 1692e(2).
>
> "The threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5).
>
> "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."  15 U.S.C. §1692e(10).

42. CCS violated 15 U.S.C. §§ 1692e, e(2), and e(10) through the inclusion of the portion of its collection letter where it mentioned that Plaintiff purportedly made a partial payment and that the remaining balance of the subject debt was $272.70. Plaintiff never made a payment and she successfully contested every improper withdrawal made on her bank account. CCS deceptively attempted to collect on the subject consumer debt by suggesting that she had made a previous payment and that the balance on her account was $272.70, because Plaintiff would be improperly incentivized to pay the smaller amount CCS was trying to collect in order to put an end to the collection attempts of a debt Plaintiff never owed.

43. Furthermore, CCS violated 15 U.S.C. §§ 1692e(5) in its second letter by insinuating that it had the legal ability to tack on additional charges to the subject debt. CCS' second letter had a higher amount owed than its first letter. By sending both letters, CCS implied that it can legally add other amounts, such as interest, later charges, and/or fees, to the subject debt. Even if Plaintiff owed the subject debt, which she contends that she does not, CCS improperly implied that it could tack on additional charges in a deceptive and misleading attempt to coerce Plaintiff into paying the subject consumer debt.

### b. Violations of FDCPA § 1692f

44. The FDCPA, pursuant to 15 U.S.C. §1692f, prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

45. In addition, this section enumerates specific violations, such as:

> "The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law ." 15 U.S.C. §1692f(1).

46. CCS violated § 1692f and f(1) when it unfairly suggested that it could collect on the subject debt. Plaintiff and Kemper never entered into a contract, therefore Kemper was never authorized to receive payments from Plaintiff. Consequently, CCS unfairly and unconscionably attempted to collect on an amount that was never expressly authorized by an agreement.

47. CCS further violated § 1692f and f(1) when it unfairly suggested that it could collect additional amounts above and beyond the total balance due as represented in the original letter. Because CCS and its client were precluded from adding these costs and interest, the suggestion that it could collect these amounts is a violation of the above referenced portions of the FDCPA.

### c. Violations of FDCPA § 1692g

48. The FDCPA, pursuant to 15 U.S.C. §1692g(a)(3) & (4), mandates that "[w]hithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall… send the consumer a written notice containing a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;" and "a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of

a judgment against the consumer and a copy of such verification or judgment will be mailed by the debt collector[.]"

49. Upon information and belief, the letter Plaintiff received from CCS in early September is the first and only communication between Plaintiff and CCS through the filing of this action. CCS's letter violates §1692g(a)(3) & (4) because it fails to provide Plaintiff with notice that Plaintiff can dispute the debt and that CCS must provide verification of the debt or judgment against her upon a written request.

50. As pled in paragraphs 20, and 31 through 34, Plaintiff has been harmed and suffered damages as a result of CCS' illegal actions.

WHEREFORE, Plaintiff, VICKIE DAVIS, respectfully requests that this Honorable Court enter judgment in her favor as follows:

    a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

    b. Awarding Plaintiff statutory damages of $1,000.00 as provided under 15 U.S.C. §1692k(a)(2)(A);

    c. Awarding Plaintiff actual damages, in an amount to be determined at trial, as provided under 15 U.S.C. §1692k(a)(1);

    d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k(a)(3);

    e. Enjoining CCS from further contacting Plaintiff; and

    f. Awarding any other relief as this Honorable Court deems just and appropriate

### COUNT II – VIOLATIONS OF THE TEXAS DEBT COLLECTION ACT
### (AGAINST CCS)

51. Plaintiff restates and realleges paragraphs 1 through 50 as though fully set forth herein.

52. Plaintiff is a "consumer" as defined by Tex. Fin. Code Ann. § 392.001(1).

53. CCS is a "debt collector" and a "third party debt collector" as defined by Tex. Fin. Code Ann. § 392.001(6) and (7).

54. The subject debt is a "consumer debt" as defined by Tex. Fin. Code Ann. § 392.001(2) as it is an obligation, or alleged obligation, arising from a transaction for personal, family, or household purposes.

### a. Violations of TDCA § 392.304

55. The TDCA, pursuant to Tex. Fin. Code Ann. § 392.304(a)(8), prohibits debt collectors from "misrepresenting the character, extent, or amount of a consumer debt . . . ." The TDCA, pursuant to Tex. Fin. Code Ann. § 392.304(a)(19), further prohibits a debt collector from "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer."

56. CCS violated the above referenced portions of the TDCA through the misrepresentations of its ability to collect on any amount from Plaintiff. As outlined above, CCS and Kemper were precluded from collecting on any amount from Plaintiff because there was never an agreement between Kemper and Plaintiff, demonstrating the falsity of CCS's representations as to the character of the subject debt.

WHEREFORE, Plaintiff, VICKIE DAVIS, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Entitling Plaintiff to injunctive relief pursuant to Tex. Fin. Code Ann. § 392.403(a)(1).

c. Awarding Plaintiff actual damages, pursuant to Tex. Fin. Code Ann. § 392.403(a)(2).

d. Awarding Plaintiff punitive damages, in an amount to be determined at trial, for the underlying violations;

e.  Awarding Plaintiff costs and reasonable attorney fees, pursuant to Tex. Fin. Code Ann. § 392.403(b);

f.  Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT III – VIOLATIONS OF THE TEXAS DEBT COLLECTION ACT
### (AGAINST KEMPER)

57. Plaintiff restates and realleges paragraphs 1 through 56 as though fully set forth herein.

58. Plaintiff is a "consumer" as defined by Tex. Fin. Code Ann. § 392.001(1).

59. Kemper is a "debt collector" as defined by Tex. Fin. Code Ann. § 392.001(6).

60. The subject debt is a "consumer debt" as defined by Tex. Fin. Code Ann. § 392.001(2) as it is an obligation, or alleged obligation, arising from a transaction for personal, family, or household purposes.

a.  **Violations of TDCA § 392.304**

61. The TDCA, pursuant to Tex. Fin. Code Ann. § 392.304(a)(8), prohibits debt collectors from "misrepresenting the character, extent, or amount of a consumer debt . . . ." The TDCA, pursuant to Tex. Fin. Code Ann. § 392.304(a)(19), further prohibits a debt collector from "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer."

62. Kemper violated the above referenced portions of the TDCA through the misrepresentations as to its ability to collect premium payments by regularly withdrawing money from Plaintiff's account when it did not have a contract with Plaintiff. As outlined above, Kemper was precluded from collecting from Plaintiff because Kemper and Plaintiff never reached an agreement for Plaintiff to purchase insurance from Kemper, demonstrating the falsity of Kemper's representations as to the character of the subject debt.

WHEREFORE, Plaintiff, VICKIE DAVIS, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Entitling Plaintiff to injunctive relief pursuant to Tex. Fin. Code Ann. § 392.403(a)(1).

c. Awarding Plaintiff actual damages, pursuant to Tex. Fin. Code Ann. § 392.403(a)(2).

d. Awarding Plaintiff punitive damages, in an amount to be determined at trial, for the underlying violations;

e. Awarding Plaintiff costs and reasonable attorney fees, pursuant to Tex. Fin. Code Ann. § 392.403(b);

f. Awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT IV – VIOLATIONS OF THE TEXAS DEBT COLLECTION ACT
### (AGAINST SELECTQOUTE)

63. Plaintiff restates and realleges paragraphs 1 through 62 as though fully set forth herein.

64. Plaintiff is a "consumer" as defined by Tex. Fin. Code Ann. § 392.001(1).

65. SelectQuote is a "debt collector" as defined by Tex. Fin. Code Ann. § 392.001(6).

66. The subject debt is a "consumer debt" as defined by Tex. Fin. Code Ann. § 392.001(2) as it is an obligation, or alleged obligation, arising from a transaction for personal, family, or household purposes.

### a. Violations of TDCA § 392.304

67. The TDCA, pursuant to Tex. Fin. Code Ann. § 392.304(a)(19), further prohibits a debt collector from "using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer."

68. SelectQuote violated the above referenced portion of the TDCA when it disclosed Plaintiff's bank account information to Kemper. Upon information and belief, SelectQuote

erroneously advised Kemper that it could collect premium payments under the proposed insurance policies that Plaintiff did not agree to purchase. Consequently, SelectQuote violated the TDCA by deceptively representing that Plaintiff purchased Kemper's insurance policies and disclosing her bank account information, without her consent, for payments to be withdrawn.

WHEREFORE, Plaintiff, VICKIE DAVIS, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Entitling Plaintiff to injunctive relief pursuant to Tex. Fin. Code Ann. § 392.403(a)(1).

c. Awarding Plaintiff actual damages, pursuant to Tex. Fin. Code Ann. § 392.403(a)(2).

d. Awarding Plaintiff punitive damages, in an amount to be determined at trial, for the underlying violations;

e. Awarding Plaintiff costs and reasonable attorney fees, pursuant to Tex. Fin. Code Ann. § 392.403(b);

f. Awarding any other relief as this Honorable Court deems just and appropriate.

Dated: October 10, 2018                                    Respectfully submitted,

s/ Nathan C. Volheim (Lead Attorney)                       s/Taxiarchis Hatzidimitriadis
Nathan C. Volheim, Esq. #6302103                           Taxiarchis Hatzidimitriadis, Esq. #6319225
*Counsel for Plaintiff*                                    *Counsel for Plaintiff*
Admitted in the Southern District of Texas                 Admitted in the Southern District of Texas
Sulaiman Law Group, Ltd.                                   Sulaiman Law Group, Ltd.
2500 South Highland Ave., Suite 200                        2500 South Highland Ave., Suite 200
Lombard, Illinois 60148                                    Lombard, Illinois 60148
(630) 568-3056 (phone)                                     (630) 581-5858 (phone)
(630) 575-8188 (fax)                                       (630) 575-8188 (fax)
nvolheim@sulaimanlaw.com                                   thatz@sulaimanlaw.com